IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW K. BONNER, JR.,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIA INCORPORATED,<br><br>Defendant. | No. 3:18-cv-09187-PGS-LHG<br><br>**Declaration of Eugene Volokh** |

Pursuant to 28 U.S.C. § 1746(2), Eugene Volokh hereby declares as follows:

1. The attached Exhibits A, B, and C are accurate copies of the three blog posts that I wrote that mentioned Mr. Bonner's name. I believe that they accurately report the underlying facts.

2. The attached Exhibit D is an accurate copy of the letter that I received, apparently from Mr. Bonner, demanding that I stop writing about him and that I remove my past posts about him.

3. I have not removed any of the three posts, nor do I intend to do so. I intend to continue writing about this case (and any related cases), and in the process mentioning Mr. Bonner's involvement with the case, as is the norm when people write about lawsuits and court decisions.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated: October 21, 2019

s/ Eugene Volokh
Eugene Volokh

**Exhibit A**

10/21/2019 "Right to Be Forgotten" as to Court Opinions Rejected ... – Reason.com

FREE SPEECH

# "Right to Be Forgotten" as to Court Opinions Rejected ...

... by a federal district court decision yesterday, in a case brought by a pro se litigant in New Jersey.

EUGENE VOLOKH | THE VOLOKH CONSPIRACY | 8.20.2019 8:10 AM

A. In 2017, Bonner lost a case in New Jersey state appellate court, *Bonner v. Cumberland Reg'l High Sch. Dist.* Justia.com, a site that (among other things) publishes online copies of state and federal court opinions, included that nonprecedential New Jersey decision; Bonner then sued in federal court, asking the federal court to order Justia to remove the opinion. Yesterday federal District Judge Peter G. Sheridan granted Justia's motion to dismiss (*Bonner v. Justia, Inc.*, 2019 WL 3892858):

> Plaintiff seems to believe the New Jersey [appellate] opinion is his personal property.... Plaintiff seeks to prevent the [opinion] from being "reported, copied, distributed, shared, or by any other means used by anyone or any website." "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." ...
>
> Plaintiff is proceeding *pro se*, and the Court should read Plaintiff's complaint [here, amended] generously and hold it "to less stringent standards than formal pleadings drafted by lawyers." ... [But t]he amended complaint is substantively meritless, as was the original complaint.
>
> Plaintiff is essentially attempting to seal the Appellate Division's Opinion, which—like federal court documents—[is] open to the public. There is a heightened public interest in disclosure of materials that are filed within the Courts, which outweighs private interests in confidentiality, as the Courts are funded by the public and in general judicial proceedings are not done in secret....
>
> Because Plaintiff has had two opportunities to set forth a cause of action, and failed to do so, to allow another amendment to the complaint would be futile. As such, there appears to be no cause of action for the conduct the amended complaint is dismissed with prejudice.

This is clearly the right result, but, to my shock, I've seen one case in which a trial court did order a different online repository (leagle.com) to remove a person's name from a published court opinion archived at that repository (more on that in a later post). And, as I've noted before, I've seen cases in which trial courts wrongly ordered Google to deindex a photo in a newspaper (*Malandrucco*), or wrongly ordered media outlets to remove stories (*Thorworth* and *Barone*).

Trial courts sometimes do the darndest things, including in cases brought by pro se plaintiffs. While litigating pro se is often a handicap, it's sometimes an advantage: pro se litigants often don't know what's impossible, so they ask for it—and sometimes get it. But not this time.

B. Bonner also asked—beyond his request that the New Jersey state court opinion be removed—that any order issued by the federal court resolving Justia's motion to dismiss Bonner's complaint "not 'be reported, copied, distributed shared, or by any other means used by anyone or any website.'" (Bonner's request also stated, "Confidential Notice: This letter and the things contained herein are confidential information and are not to be copied, shared, or distributed by any source"; but motions are generally public documents, just as opinions are.)

I had been tracking the case on Bloomberg Law, because I have been writing about attempts to get court opinions hidden. I thus noticed that request to seal, and filed a motion to intervene and oppose the request. The federal court granted my motion to intervene, and denied Bonner's request to issue the order under seal. Again, that strikes me as clearly right.

There is more to this litigation, but I will save that for one or two upcoming posts.

***NEXT:*** **The Government Wants a 'Red Flag' Social Media Tool. That's a Terrible Idea.**

EUGENE VOLOKH is the Gary T. Schwartz Distinguished Professor of Law at UCLA.

FREE SPEECH RIGHT OF ACCESS RIGHT TO BE FORGOTTEN

MEDIA CONTACT & REPRINT REQUESTS

Show Comments (35)

https://reason.com/2019/08/20/right-to-be-forgotten-as-to-court-opinions-rejected-by-federal-district-court/

Exhibit B

FREE SPEECH

# OK to Oppose Sealing of Court Documents Without Local Counsel

... if you're asserting your own rights of access (which all of us have) to court records.

EUGENE VOLOKH | THE VOLOKH CONSPIRACY | 8.21.2019 8:03 AM

As I mentioned yesterday, the U.S. District Court in New Jersey in *Bonner v. Justia, Inc.* denied plaintiff's request for a sealed opinion in that case. I had moved to intervened to oppose the motion, and the court granted my motion.

But not at first: In March, when I first filed a letter brief opposing the motion to seal, the court rejected it, writing "In order for Mr. Volokh's letter to be considered he must be represented by counsel or ... be retained as an expert by a party to the action." And it's true that (1) I'm not a member of the bar of the District of New Jersey, and (2) I wasn't represented by a member of that bar.

Yet I thought I didn't need a lawyer, because I was representing myself, asserting my own personal right of access to court records. I therefore asked the court to reconsider its denial, arguing,

> Proposed intervenors may appear *pro se* to assert their own rights, just as plaintiff may appear *pro se* to assert his own claimed rights. Indeed, District Courts have allowed such *pro se* intervention in cases seeking unsealing of documents. [Citations omitted.] ...
>
> The Hawaii Supreme Court has recently analyzed the matter in more detail, and likewise concluded that a writer could move *pro se* to unseal a case, without representing his publication, even though he was planning to write an article in that publication. "Any member of the public may assert a personal right to access judicial proceedings and records," the court concluded, and "the right of self-representation exists in both criminal and civil proceedings"; because of this, "Grube was permitted to prosecute his own cause before the [state trial] court, and the court erred by requiring him to retain counsel to enforce his personal right." *Grube v. Trader*, 420 P.3d 343, 359-60 (Haw. 2018). The same analysis should apply in federal court, to *pro se* intervention in order to oppose sealing of documents.

And while I likely could have gotten someone to represent me *pro bono* and avoid this whole problem, that's because I have the luxury of a pretty substantial network of lawyer friends and associates (stemming in large part from this very blog). Many others lack that, and they ought to be able to intervene representing themselves:

> Journalists and other commentators usually seek to intervene to unseal cases without having a financial stake in the dispute. They (and their employers) profit only indirectly and speculatively, if at all, from getting access to the documents. If journalists always had to pay a lawyer to assert their own rights of access, they would often be practically unable to seek unsealing, even though they had the First Amendment right to do so; and while *pro bono* local counsel are sometimes available, but journalists cannot count on such largesse. Journalists and other writers should thus be at least as able to intervene *pro se* as plaintiffs are able to file their complaints *pro se*.

I'm pleased to say that the court in *Bonner* ultimately agreed with me on this:

> Professor Volokh has identified several cases in which courts have permitted an interested party like himself to file similar motions to intervene pro se. *See, e.g., In re Application-cr-1101 (ILG)*, 891 F. Supp. 2d 296 , 297-98 (E.D.N.Y. 2012); *FTC v. OSF Healthcare Sys.*, [2012 BL 82337], 2012 WL 1144620 , at 1 (N.D. Ill. April 5, 2012); *In re Sealed Search Warrants Issued June 4 and 5, 2008*, [2008 BL 160272], 2008 WL 5667021 (N.D.N.Y. 2008). Professor Volokh has also cited cases in which he has intervened pro se to oppose a motion to seal or to file a motion to unseal. *See Furtado v. Henderson*, [2018 BL 463193], 2018 WL 6521914 (D. Mass. Nov. 26, 2018); *Barrow v. Living Word Church*, No. 3:15-CV-341 (S.D. Ohio Aug. 16, 2016); Doe v. Does, No. 1:16-CV-7359 (N.D. Ill. Mar. 11, 2019); *Parson v. Farley*, 352 F. Supp. 3d 1141, 1147 Okla. 2018 )....
>
> "Any interested person may move to intervene pursuant to Fed. R. Civ. P. 24(b) before the return date of any motion to seal or otherwise restrict public access or to obtain public access to materials or judicial proceedings filed under seal." L. Civ. R. 5.3(c)(5) . The Third Circuit has "routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994). "[T]he procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Id.* at 778....

The court did add, "Professor Volokh's motion to intervene pro se is more like an application to appear as amicus curiae, as he has special knowledge of this area of law. As such, Professor Volokh is allowed to file a brief and argue the merits of the motion to seal." I'd quibble with that: Though I like to think my arguments were helpful to the court, I was trying to intervene to assert my own rights, and I think my rights in this respect were no greater than the rights of anyone else who seeks a right of access to court records, regardless of whether that person "has special knowledge of this area of the law." (Again, see *Grube v. Trader*, where the Hawaii Supreme Court allowed *pro se* intervention by a journalist who appeared to have no specialized legal knowledge.)

But in any event, I think the *Bonner* decision, and the cases it cites, might be helpful to people who want to intervene *pro se* to oppose the sealing of court records.

Exhibit C

10/21/2019

How I Was a Criminal Defendant in a N.J. Harassment Case – Reason.com

FREE SPEECH

# How I Was a Criminal Defendant in a N.J. Harassment Case

"Eugene Volokh told the police he refuses to leave me alone."

EUGENE VOLOKH | THE VOLOKH CONSPIRACY | 8.22.2019 8:01 AM

https://reason.com/2019/08/22/how-i-was-a-criminal-defendant-in-a-n-j-harassment-case/

For years, I've been writing extensively about criminal harassment laws (see, e.g., this law review article), and filing briefs in criminal harassment cases. But in April, my experience with harassment laws took a different turn—I learned that a criminal harassment case had been filed against me in New Jersey, under N.J. Stats. 2c:33-4(c):

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he ... Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

In theory, such a charge could yield up to 30 days in jail.

The criminal summons noted that the complaint had been filed by one Andrew Bonner, and it was based on his assertion that, "to the best of his/her knowledge, information and belief, [Eugene Volokh] ... did,"

WITHIN THE JURISDICTION OF THIS COURT, COMMIT THE OFFENSE OF HARASSMENT BY: EUGENE VOLOKH CONTINUES TO MAIL HARASSING LETTERS TO ME AT MY FAMILY'S HOME ADDRESS. IN HIS LETTERS HE THREATENS FURTHER CYBER-HARASSMENT AND SLANDER. THE NEW JERSEY STATE POLICE CONTACTED THE PERSON AND TOLD HIM I DON'T WANT HIM CONTACTING ME. EUGENE VOLOKH TOLD THE POLICE HE REFUSES TO LEAVE ME ALONE.

And as it happens, I was indeed mailing material to Mr. Bonner at his home address. The New Jersey state police did contact me at his behest and told me he didn't want me mailing such material. And I did tell them that I wouldn't stop (though, as you might gather, I also told them why). The facts in his allegations were thus basically correct—so far as they went—though the legal characterization (that the material was "harassing" and "threaten[ed] further cyber-harassment and slander") was not.

Now you might think that, before the charges were filed, the prosecutor would have looked into why I was troubling Mr. Bonner so, and whether I was indeed acting "with purpose to alarm or seriously annoy" and "harass" him (which is what the statute requires).

But it turns out that New Jersey is one of the few states that lets a private complainant start a criminal proceeding without a prosecutor's approval. All that is required is that a person file a complaint, and that it "appear[] to the judicial officer from the complaint, affidavit, certification or testimony that there is probable cause to believe that an offense was committed, the defendant committed it, and a Complaint-Warrant ... or summons can be issued." And as you might gather, the judicial officer seems to generally operate just from the face of the complaint, without any investigation. (Prosecutors, for all that people sometimes complain about them, at least generally do investigate the complainant's accusations a bit before filing charges.)

And what the complaint didn't explain was why I troubled myself with mailing things to Mr. Bonner: Because I was required to do that by Federal Rule of Civil Procedure 5(a)(1), which provides that, generally speaking, any federal court filing "must be served on every party."

As I noted a few days ago in this post ("'Right to Be Forgotten' as to Court Opinions Rejected ..."), I had moved to intervene in a case Mr. Bonner had filed, in order to oppose his attempt to seal any court order the court would issue in that case. He had filed the case *pro se*, so the address in the court files was his home address (and, as best I can tell, he wasn't registered for electronic court filing); I therefore basically had to either personally hand all my filings to him or mail them to him. A prosecutor, I presume, would likely have looked into this—if only by asking Mr. Bonner to show him the offending mailings, which are clearly service copies of court filings. But the judicial officer issuing the criminal complaint did not.

Thankfully, I am fortunate to know New Jersey criminal lawyer Steve Kaflowitz—as it happens, from when I filed amicus briefs supporting his position in a case before the New Jersey Appellate Division and New Jersey Supreme Court (*State v. Burkert*). That case, as it happens, was a successful First Amendment challenge to an application of ... New Jersey's criminal harassment law.

Steve and his colleagues at Caruso Smith Picini, Tim Smith and Wolodymyr Tyshchenko, very kindly agreed to represent me pro bono. (Many, many thanks to them.) Thanks to their help, the prosecutor declined to prosecute—prosecutors in New Jersey have that power, albeit only after a citizen criminal complaint is filed—and the court dismissed the case. Indeed, thanks to their help, I didn't even need to fly out to New Jersey to appear in the case. At the hearing in late June (the transcript of which finally arrived Monday), the judge explained how little it can take in New Jersey to get the criminal charges initially filed:

> THE COURT: Judicial officers have to look at probable cause statements or citizen filed complaints dozens of them monthly, if not weekly, and have to make determinations based on the limited amount of information provided and they are asked to do so with taking the complainant's words as 100 percent truthful and, unfortunately, given the limitations of time and resources, a lot—many times they are liberally reviewed and liberally construed and in this case, the probable cause was found.

And the judge also explained the factual reasons why the case had to be dismissed:

> THE COURT: ... Mr. Bonner, ... not only must [Volokh] not stop sending them [i.e., these materials] to you, he is actually required by law to send a copy to you if any correspondence he sends to the Court because you have filed pro se. It is part of the Court Rules that stipulate that any party —any pro se party to an action must be copied so that they are aware of the correspondence, because it would be an unfair prejudice to you if you didn't know what your adversary was doing and you weren't getting notice of that.
>
> If you were an attorney, it would be the same—the same rule would apply. The attorney must be copied any time a letter to the Court is written or a motion is filed or any action is taken in correspondence with the Court. That's part of the fundamental rules of Court and there's nothing that can—nothing that can be done to stop him from copying you on letters that he's addressing to the Court....
>
> [T]he Court would never be able to find harassment given that the only correspondence that you have is legally required correspondence in terms of Mr. Volokh's participation in this—as an amicus in this federal matter.

This statement is slightly imprecise—I was participating as a proposed intervenor, not as an amicus—but otherwise strikes me as quite correct.

So all's well that ends well, again thanks to Messrs. Kaflowitz, Smith, and Tyshchenko; and I should stress that many people have faced wrongful charges that were much more perilous than the petty disorderly conduct charge that I was facing. Still, I thought it was an interesting story, and something of an illustration of how the New Jersey citizen complaint process can go (even if briefly and reversibly) off the rails. I can imagine how someone else in my shoes might have felt, if he didn't know local lawyers who were happy to help, and didn't know enough about the relevant legal rules to be confident that everything would turn out fine.

UPDATE: A reader offers a different perspective on private prosecutions:

> The private prosecution practice carries on for two basic reasons:

> [First, i]t works as a pressure-relief valve for the folks like your adversary Bonner, who definitely would not have listened to, let alone believed, anyone not wearing a black robe tell them about F.R.Civ.P. 5 and its vexatious mailing requirement. Judge Smith down at City Hall hears his gripe and, from atop his high bench, explains "you got no reason to complain, so stop." The black robe does it.
>
> Second, it's a way around the mostly-former (but still extant) tendency of prosecutors and cops to look the other way when their cousin/brother-in-law/bookie* was causing trouble to some prole lacking political suck, and said prole decided to complain only to find official indolence provided no relief. In other words, it's another relief valve to mollify the one-sidedness of Jersey Justice.
>
> And I suspect that notwithstanding the occasional misuses, it will continue. It comes up for reform every 2 years (the Supreme Court's committee to change the rules issues their changes every other year, right about this time of year) and maunders on....
>
> *Or guy with a courtesy plate or, worse, crests on his plates. What, you never heard of "courtesy plates"? Quick way for the cop stopping someone for a traffic violation to decide it's time for a warning only, or to determine fault in the accident before interviewing any witnesses (https://en.wikipedia.org/wiki/Vehicle_registration_plates_of_New_Jersey#Courtesy_plates). The lower your number, the more suck you have.
>
> If you have a gold-plated bas relief reproduction of the state seal between the letters and numbers of your courtesy plate, you're a real player and you really have to be over the line for cops to mess with you.

***NEXT:*** **China Escalates Hong Kong Conflict By Detaining Consulate Staffer**

**EUGENE VOLOKH** is the Gary T. Schwartz Distinguished Professor of Law at UCLA.

FREE SPEECH HARASSMENT

MEDIA CONTACT & REPRINT REQUESTS

Show Comments (52)

**Exhibit D**


**THIS IS A WARNING**

**THIS IS A WARNING IN THE FORM OF A CEASE AND DESIST LETTER**

I, Andrew K. Bonner Jr. have been advised by the New Jersey State Police Cyber Crimes Unit to issue this cease and desist letter to you Eugene Volokh. This letter is a formal cease and desist letter telling you to cease writing about me Andrew K. Bonner Jr. on the internet. You are being told to stop writing about me (Andrew K. Bonner Jr.) on your website http://reason.com/volokh. You are being told to remove any postings you have about me on your website. You are being told to stop writing about the court litigation of the case Bonner v. Justia Incorporated which began as Bonner v. Huber. You are to stop writing about me Andrew K. Bonner Jr. on your Twitter social media page and any other social media that you have. You are being told to remove the postings on your website about the harassment complaint I had against you. You are also being told to refrain from writing about me Andrew K. Bonner Jr. or the case Bonner v. Justia Incorporated in any articles or law reviews. This warning is being issued ahead of time with the knowledge that anything you write about Andrew K. Bonner Jr. or the case Bonner v. Justia Incorporated would be biased and offensive and will be taken as such. You are also being told to refrain from trying to access any of the documents or matters of the case Bonner v. Justia Incorporated by using any wire connections or internet connections that you may have been using previously. You are being told to refrain from writing or posting anything about Andrew K. Bonner Jr. or the case Bonner v. Justia Incorporated. You are being told to refrain from retaliating against Andrew K. Bonner Jr. because of his previous harassment complaint that he had against you. You are also being told to refrain from retaliating and intimidating Andrew K. Bonner Jr. on account of his having participated in the case litigation of Bonner v. Justia Incorporated. I hope it is very clear to you that you are being told to refrain from doing conduct

that has become a concern to the New Jersey State Police Cyber Crimes Unit. Andrew K. Bonner Jr. has no desire to have contact with you and has no desire to have his life disrupted or affected by your actions. If it needs to be made clearer to you what you are being told to refrain from doing then please ask for it to be made clearer to you in another letter. Once again this is a formal cease and desist letter being issued to Eugene Volokh who is a UCLA School of Law professor.

9/18/19